UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

CFA INSTITUTE, a Virginia Non-Stock
Corporation,

                Plaintiff,

      -against-

COMMERCIAL FINANCE ASSOCIATION,
INC., a Delaware Not-for-Profit Corporation,

               Defendant.

------------------------------------- X

**ECF CASE**

Case No.

**COMPLAINT FOR TRADEMARK
INFRINGEMENT, UNFAIR
COMPETITION, UNJUST
ENRICHMENT, CANCELLATION OF A
FEDERAL TRADEMARK
REGISTRATION, AND ACCOUNTING**

**JURY DEMAND**

Plaintiff CFA Institute ("CFA Institute" or "Plaintiff"), by and through the undersigned

counsel, hereby files this Complaint for Trademark Infringement, Unfair Competition, Unjust

Enrichment, Cancellation of a Federal Trademark Registration, and Accounting against

Defendant Commercial Finance Association, Inc. ("Defendant"), and avers as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      CFA Institute is a Virginia non-stock corporation located and doing business at

915 East High Street, Charlottesville, Virginia 22902.

2.      Upon information and belief, Defendant is a Delaware not-for-profit corporation,

licensed to do business in the State of New York, with a principal place of business at 370

Seventh Avenue, Suite 1801, New York, New York 10001, and an agent for service of process at

The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York 12207.

3.      This is an action for trademark infringement and unfair competition under the

Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1051, *et seq.*,

cancellation of a federal trademark registration under 15 U.S.C. § 1064, accounting under 15

U.S.C. § 1117, dilution under New York General Business Law § 360-l, and trademark infringement, unfair competition, and unjust enrichment under New York common law.

4.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a) and (b), because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, federal unfair competition pursuant to 15 U.S.C. § 1125(a), and cancellation of a federal trademark registration pursuant to 15 U.S.C. §§ 1064 and 1119.

5.     The Court has supplemental jurisdiction over the claims of CFA Institute arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the claims of CFA Institute under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6.     The Court has personal jurisdiction over the Defendant consistent with the principles underlying the United States Constitution and the State of New York because, among other things, Defendant is located and transacts business in New York.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is located and transacts business in New York County, New York, which is where a substantial part of the events or omissions giving rise to the claims occurred and are occurring.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS
### CFA INSTITUTE'S VALUABLE RIGHTS

8.     CFA Institute is an internationally renowned global, not-for-profit association of investment professionals with over 147,000 members in 150 countries worldwide and 149 local member societies in sixty-nine countries.  CFA Institute is the world's largest and best-known association of investment professionals.  In connection therewith, CFA Institute uses in interstate

- 2 -

commerce and owns the well-known and distinctive trademarks CFA, CFA INSTITUTE, and CHARTERED FINANCIAL ANALYST, and variations thereof (the "CFA Trademarks"), including several United States trademark registrations.  Since as early as 1962, CFA Institute and its predecessors-in-interest have continuously used the CFA Trademarks in interstate commerce.

9.     CFA Institute's predecessor-in-interest coined the designation "Chartered Financial Analyst" or "CFA" and began using it to identify its certification program to its members and those belonging to its sister organization.  CFA Institute has all the rights, benefits, and interests of its predecessors in connection with and arising out of the CFA Trademarks and associated certification program, including all intellectual property rights therein.

10.     CFA Institute owns at least nine United States trademark registrations for the CFA Trademarks, with a date of first use at least as early as 1962.

11.     CFA Institute certifies the financial analysis services of others (the "Certification Services") under its CFA CHARTERED FINANCIAL ANALYST & Design Mark (U.S. Reg. No. 2661114) (the "Certification Mark"), and offers educational, publication, and association goods and services "in the field of financial analysis" (collectively hereinafter, together with the Certification Services, the "CFA Institute Goods & Services") under its marks C.F.A. (U.S. Reg. No. 935504), CFA (U.S. Reg. No. 2493899), CFA (U.S. Reg. No. 2495459), CFA THE INSTITUTE OF CHARTERED FINANCIAL ANALYSTS & Design (U.S. Reg. No. 2580663), CFA INSTITUTE (U.S. Reg. No. 3202615), CFA INSTITUTE & Design (U.S. Reg. No. 4296372), CFA INSTITUTE (U.S. Reg. No. 4389314), and CFA INSTITUTE (U.S. Reg. No. 4768863) (collectively hereinafter, together with the CFA Certification Mark, the "CFA Marks").

EAST\142631155.2

12.     CFA Institute has duly and properly registered the CFA Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register.

13.     CFA Institute filed its federal trademark application for C.F.A. for "association services—namely, the promotion of interest and professional standards in the field of financial analysts" in International Class 42, on August 14, 1970, with a claimed date of first use of September 15, 1963.  This registration issued on June 6, 1972 as Registration No. 935504.  This registration was deemed incontestable by the USPTO on September 19, 1977.  A true and correct copy of this incontestable United States Trademark Registration No. 935504 is attached hereto as **Exhibit 1**.

14.     CFA Institute filed its federal trademark application for CFA for "educational services, namely arranging, conducting and providing courses of instruction, workshops, seminars, and conferences in the field of financial analysis and distributing course materials in connection therewith" in International Class 41, on August 30, 1999, with a claimed date of first use of December 31, 1962.  This registration issued on October 2, 2001 as Registration No. 2493899.  This registration was deemed incontestable by the USPTO on October 16, 2007.  A true and correct copy of this incontestable United States Trademark Registration No. 2493899 is attached hereto as **Exhibit 2**.

15.     CFA Institute filed its federal trademark application for CFA for "printed publications in the field of financial analysis and in support of the interests of financial analysts" in International Class 16, on August 30, 1999, with a claimed date of first use of December 31, 1965.  This registration issued on October 9, 2001 as Registration No. 2495459.  This registration was deemed incontestable by the USPTO on October 28, 2008.  A true and correct

copy of this incontestable United States Trademark Registration No. 2495459 is attached hereto as **Exhibit 3**.

16.     CFA Institute filed its federal trademark application for CFA THE INSTITUTE OF CHARTERED FINANCIAL ANALYSTS & Design for "printed publications in the field of financial analysis and in support of the interests of financial analysts" in International Class 16, on August 30, 1999, with a claimed date of first use of June 30, 1971.  This registration issued on June 18, 2002 as Registration No. 2580663.  This registration was deemed incontestable by the USPTO on June 16, 2008.  A true and correct copy of this incontestable United States Trademark Registration No. 2580663 is attached hereto as **Exhibit 4**.

17.     CFA Institute filed its federal certification mark application for CFA CHARTERED FINANCIAL ANALYST & Design for "financial analysis services" in Class B, on August 30, 1999, with a claimed date of first use of May 1, 1999.  This registration issued on December 17, 2002 as Registration No. 2661114.  This registration was deemed incontestable by the USPTO on September 3, 2008.  A true and correct copy of this incontestable United States Trademark Registration No. 2661114 is attached hereto as **Exhibit 5**.

18.     CFA Institute filed its federal trademark application for CFA INSTITUTE for "printed publications, namely, newsletters, brochures, books, digest books, and monographs in the fields of investment management and financial analysis and in support of the interests of investment professionals and financial analysts" in International Class 16, "association services, namely, the promotion of professional standards and practices and providing career information in the fields of investment management and financial analysis; promoting the interests of investment professionals and financial analysts" in International Class 35, and "educational services, namely, arranging, conducting, and providing courses of instruction, examinations,

workshops, seminars and conferences in the fields of investment management and financial analysis and distributing course materials in connection therewith" in International Class 41, on April 30, 2004, with a claimed date of first use of June 1, 2004. This registration issued on January 23, 2007 as Registration No. 3202615. This registration was deemed incontestable by the USPTO on January 25, 2013. A true and correct copy of this incontestable United States Trademark Registration No. 3202615 is attached hereto as **Exhibit 6**.

19.     CFA Institute filed its federal trademark application for CFA INSTITUTE & Design for "printed publications, namely, newsletters, brochures, books, digest books, and monographs in the fields of investment management and financial analysis and in support of the interests of investment professionals and financial analysts" in International Class 16, "association services, namely, the promotion of professional standards and practices and providing career information in the fields of investment management and financial analysis; promoting the interests of investment professionals and financial analysts" in International Class 35, and "educational services, namely, arranging, conducting, and providing courses of instruction, examinations, workshops, seminars and conferences in the fields of investment management and financial analysis and distributing course materials in connection therewith" in International Class 41, on November 22, 2011, with a claimed date of first use of May 18, 2012 for International Class 16 and May 7, 2012 for International Classes 35 and 41. This registration issued on February 26, 2013 as Registration No. 4296372. A true and correct copy of this United States Trademark Registration No. 4296372 is attached hereto as **Exhibit 7**.

20.     CFA Institute filed its federal trademark application for CFA INSTITUTE for "downloadable publications, in the nature of newsletters, magazines, books, digest books, and monographs and downloadable video and audio content, all in the fields of investment

management and financial analysis" in International Class 9, on June 13, 2012, with a claimed date of first use of June 2004.  This registration issued on August 20, 2013 as Registration No. 4389314.  A true and correct copy of this United States Trademark Registration No. 4389314 is attached hereto as **Exhibit 8**.

21.     CFA Institute filed its federal trademark application for CFA INSTITUTE for "carry all bags, tote bags and leather goods, namely, briefcases, wallets and handbags" in International Class 18, "apparel, namely, shirts, jackets and headwear" in International Class 25, and "on-line retail store services featuring general consumer merchandise" in International Class 35 on September 24, 2010, with a claimed date of first use of May 7, 2012.  This registration issued on July 7, 2015 as Registration No. 4768863.  A true and correct copy of this United States Trademark Registration No. 4768863 is attached hereto as **Exhibit 9**.

22.     The federal trademark registrations referenced above and attached hereto as Exhibits 1 through 9 are valid and subsisting, and provide conclusive evidence of the right of CFA Institute to use the CFA Marks in commerce.

23.     The CFA Marks clearly establish that CFA Institute has senior trademark rights in its family of CFA Marks and consequently there is no question of priority of rights, as such priority clearly belongs to CFA Institute.

24.     CFA Institute's United States Trademark Registration Nos. 935504, 2493899, 2495459, 2580663, 2661114, and 3202615 referenced above and attached hereto as Exhibits 1 through 6, are valid and incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and are therefore conclusive evidence of the validity of the registered marks and of the registration of the marks, of the ownership of the marks by CFA Institute, and of the exclusive right to use the registered marks in commerce by CFA Institute under Section 33 of the Lanham

Act, 15 U.S.C. § 1115.  As such, CFA Institute's incontestable federal trademark registrations confer exclusive use of the CFA Marks throughout the United States in connection with the CFA Institute Goods & Services.

25.     CFA Institute has extensively used the CFA Marks and has advertised, promoted, and offered the CFA Institute Goods & Services under the CFA Marks in interstate commerce through various channels of trade.  As a result, the customers and potential customers of CFA Institute, and the public in general have come to know and recognize the CFA Marks as identifying the CFA Institute Goods & Services as goods and services of the highest quality offered by CFA Institute, and associate the CFA Marks with the CFA Institute Goods & Services.  CFA Institute has, thus, built up extensive and invaluable goodwill in connection with the sale of its goods and services under the CFA Marks.

26.     CFA Institute administers the internationally recognized CFA Program.  The CFA Program is a graduate level, self-study examination system for investment professionals.  The CFA Program sets the global standard for investment knowledge, standards, and ethics, and is highly esteemed worldwide.

27.     The CFA qualification may be described as roughly equivalent to a post-graduate degree in investment management.  Candidates who seek the CFA charter and membership in CFA Institute must:

> (i)     have at least four years of acceptable work experience as a financial analyst; that is, someone who spends a substantial portion of time collecting, evaluating, or applying financial, economic, and statistical data, as appropriate, in the investment decision-making process;

(ii)    pass a series of three rigorous, six-hour examinations, covering, *inter alia*, the fields of accounting, economics, securities analysis, and asset portfolio management;

(iii)    submit sponsorship forms from other members and a supervisor; and

(iv)    comply at all times with the Code of Ethics and Standards of Professional Conduct of CFA Institute.

28.    Upon successful completion of CFA Institute's registration process and examination, candidates are awarded the right to use the CFA Certification Mark, the professional designation "Chartered Financial Analyst" or "CFA" (collectively hereinafter, the "Professional Designation"), and become eligible for CFA Institute's membership.  Members must pay annual dues and sign a professional conduct statement each year.

29.    CFA Institute offers a range of educational programs and services for members, program candidates, investors, employers, institutions, and the press.  CFA Institute's mission is to lead the investment profession globally by setting the highest standards of ethics, education, and professional excellence.  To reflect this, CFA Institute has developed a code of ethics and standards of professional conduct for investment professionals.  All members of CFA Institute and all CFA Program candidates must adhere to the CFA Institute Code of Ethics and Standards of Professional Conduct.

30.    CFA Institute has used the CFA Marks for over fifty years, and has invested significant amounts of time, money, and effort in advertising and promoting the CFA Marks. CFA Institute's advertisements are seen and heard around the world by potential candidates, investment professionals, high-net-worth investors, employers, and regulators.  CFA Institute regularly advertises in print and online versions of *The Economist, Bloomberg Markets,*

- 9 -

*Financial Times, Wall Street Journal, Reuters, Business Insider, Globe and Mail*, and other high-profile publications read by investment professionals worldwide. CFA Institute also advertises on social media sites such as Facebook, Twitter, SinaWeibo, LinkedIn, and Google+.

31.     CFA Institute's charterholders heavily use and rely upon the CFA Certification Mark and Professional Designation to signify their mastery of the CFA Program and rigorous examinations, adherence to a code of ethics, and specific work and education requirements.

32.     The CFA Certification Mark and Professional Designation hold great value for CFA Institute's charterholders.

33.     CFA Institute's CFA Marks, including in particular the CFA Certification Mark and Professional Designation, are known as the gold standard of professional credentials within the global investment community.

34.     Investors and financial professionals recognize the CFA Marks as the definitive standard for measuring competence and integrity in the fields of portfolio management and investment analysis.

35.     The CFA Marks are well-known among the general public as signifying the CFA Institute Goods & Services, including in particular the Certification Services, and have been well-known since long before Defendant began engaging in the complained of conduct in this Complaint.

### DEFENDANT'S WRONGFUL CONDUCT

36.     Defendant is an association for professionals in the asset-based lending and factoring industry, which has traditionally provided association services relating to commercial lending and factoring and for the benefit of the association's commercial lending members ("Defendant's Traditional Goods & Services").

- 10 -

37.     Defendant was originally incorporated as the National Commercial Finance Conference, Inc., which name was later changed to National Commercial Finance Association, before it was further changed to the present name Commercial Finance Association, Inc.  The initials "CFA" have been historically merely an initialism for Defendant's name "Commercial Finance Association."

38.     While the parties have coexisted in the marketplace for several years, each occupying distinct positions in the marketplace, Defendant has amended its branding to give the "CFA" initialism incrementally greater prominence as a trademark, such that today Defendant uses the alleged trademark CFA and variations thereof prominently as Defendant's primary marks (the "Infringing Marks").    For example, on its primary website at http://community.cfa.com, Defendant uses at least the following marks: CFA, CFA FUNDAMENTALS, CFA FUNDING CONNECTION, CFA EDUCATION FOUNDATION, CFA LEADERSHIP INSTITUTE, CFA CAREER CENTER, CFA INDUSTRY DATA, CFA BLOG, CFA EUROPE, CFA LEADERSHIP PROGRAM, CFA 40 UNDER 40 AWARDS, CFA CHAPTER(S),   CFA   ANNUAL   CONVENTION,   CFA   YOUNG   PROFESSIONAL COMMUNITY BLOG, CFA MEMBER, CFA FIELD EXAMINER SCHOOL, CFA EXPERT COMMITTEE, THE CFA GUARANTEE, THE CFA COMMUNITY, CFA SERVICE PROVIDER  DIRECTORY,  #CFALEAD2017,  CFA  INDUSTRY  LEADERS,  CFA EDUCATION COURSES, CFA COMMITTEES, CFA MENTORING PROGRAM, CFA'S PROFESSIONAL   EDUCATION   PROGRAMS,   CFA   KNOWLEDGE   CENTRAL, CFAOPEDIA – GLOSSARY, THE CFA FOUNDATION, THE CFA DEALALERT, CFA LEAGUE TABLE, CFA DEAL TABLE, CFA ADVOCACY, CFA EDUCATION

PROGRAMS, CFA MEDIA KIT, CFA STAFF PROCEDURES, CFA SPECIALTY FINANCE

PROGRAM, and CFA INTERNATIONAL LENDING CONFERENCE.

39.     Additionally, the scope of the Defendant's Traditional Goods & Services under

the Infringing Marks has incrementally broadened, including moving from an entity membership

organization to an individual membership organization, and offering educational programs.

Indeed, Defendant's "CFA Chapters," which are analogous to the CFA Societies of CFA

Institute, offer individual membership to professionals working, associated, or interested in the

asset-based lending or factoring industry.  Further, upon information and belief, Defendant has

even publicized a potential launch of a certification program with some type of professional

designation.   Defendant's new, broader goods and services, together with Defendant's

Traditional Goods & Services, are collectively referred to herein as "Defendant's Goods &

Services."

40.     Notwithstanding CFA Institute's exclusive and long-standing rights in and to the

CFA Marks, and well after 1972, the earliest federal trademark registration date for the CFA

Marks, Defendant's recent use of the Infringing Marks has progressively encroached on the CFA

Marks of CFA Institute.

41.     Prior to CFA Institute's filing of the Complaint in this action, CFA Institute made

good faith efforts to resolve this matter amicably with Defendant.  Nevertheless, as has become

readily apparent, Defendant has no intention of resolving this matter amicably, but instead

appears to be moving forward with expanding its business under the Infringing Marks.  As a

result, CFA Institute has had no choice but to commence this action.

42.     CFA Institute recently prevailed in an Opposition Proceeding before the United

States Trademark Trial and Appeal Board ("Board"), No. 91226216, against Defendant's U.S.

service mark application for CFA FUNDING CONNECTION, Serial No. 86553367, which application Defendant expressly abandoned on February 14, 2017.  As a result of Defendant's abandonment, the Board entered judgment against Defendant, sustained the Opposition, and refused registration to Defendant.

43.     Defendant uses and intends to use the Infringing Marks without the authorization of CFA Institute, thereby confusing consumers as to the source of the goods and services and resulting in damage and detriment to CFA Institute and its reputation and goodwill, and harm to its authorized CFA charterholders.

44.     Consumers are likely to believe mistakenly that Defendant is affiliated or connected with, or otherwise authorized or sponsored by CFA Institute.  Thus, Defendant's misleading conduct is likely to harm consumers.

45.     Defendant's use of the Infringing Marks is identical to and confusingly similar to CFA Institute's CFA Marks in appearance, sound, meaning, and commercial impression.

46.     The Defendant's Goods & Services are closely related to the CFA Institute Goods & Services.

47.     Defendant's use of the Infringing Marks trades off the goodwill of CFA Institute's CFA Marks and is without permission or license from CFA Institute.

48.     Defendant advertises its goods and services in commerce using the Infringing Marks, which is identical to and confusingly similar to the CFA Marks of CFA Institute.  Both Parties utilize the same or similar channels of trade.

49.     Defendant advertises the Defendant's Goods & Services under the Infringing Marks on its website at http://community.cfa.com/home.  True and correct copies of screenshots from the website are attached hereto as **Exhibit 10**.

- 13 -

50.     Upon information and belief, Defendant knew or had reason to know of the CFA Marks of CFA Institute at the time Defendant commenced use of the Infringing Marks.

51.     Upon information and belief, Defendant intentionally adopted and uses the Infringing Marks so as to create consumer confusion and traffic off CFA Institute's reputation and goodwill under the CFA Marks.

52.     CFA Institute has used its CFA Marks continuously on or in connection with the CFA Institute Goods & Services in interstate commerce prior to the date Defendant commenced use of the Infringing Marks.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement – 15 U.S.C. § 1114)

53.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 52 above, as if set forth herein in full.

54.     Defendant's Infringing Marks are identical to or substantially indistinguishable from the CFA Marks of CFA Institute in appearance, sound, meaning, and commercial impression that the use and registration thereof is likely to cause confusion, mistake, and deception as to the source or origin of the Defendant's Goods & Services, and will injure and damage CFA Institute and the goodwill and reputation symbolized by the CFA Marks of CFA Institute.

55.     The Defendant's Goods & Services offered under the Infringing Marks are so related to the goods and services offered under the CFA Marks by CFA Institute, including CFA Institute's Certification Services under the Certification Mark, that the public is likely to be confused, deceived, and to assume erroneously that the Defendant's Goods & Services are those of CFA Institute or that Defendant is in some way connected with, licensed, or sponsored by or

- 14 -

affiliated with CFA Institute, all to CFA Institute's and its authorized CFA charterholders' irreparable damage, as well as the public's detriment.

56.     Likelihood of confusion is enhanced by the fact that the CFA Marks of CFA Institute are strong, well-known, and entitled to a broad scope of protection.

57.     Likelihood of confusion is also enhanced by the fact that Defendant's Infringing Marks are visually and phonetically identical to or substantially indistinguishable from the CFA Marks, and Defendant's Goods & Services are closely related to the CFA Institute Goods & Services, including CFA Institute's association services under the CFA Marks.

58.     Likelihood of confusion is further enhanced by the fact that Defendant's Infringing Marks and the CFA Marks of CFA Institute both prominently incorporate the identical, key component "CFA" and the Defendant's Goods & Services are closely related to the CFA Institute Goods & Services.  Specifically, the Infringing Marks wholly incorporate the identical letters "C," "F," and "A," in the same order, and the Infringing Marks are used as part of association services and for the benefit of the association's commercial lending members.

59.     Likelihood of confusion is even further enhanced by the fact that CFA Institute and Defendant market and will likely market their goods and services in the same or similar channels of trade.

60.     Defendant is not affiliated or connected with CFA Institute and has not been endorsed or sponsored by CFA Institute, nor has CFA Institute approved any of the Defendant's Goods & Services offered or sold or intended to be sold by Defendant under the Infringing Marks.

61. Defendant has never sought or obtained the permission of CFA Institute to use the Infringing Marks, nor has CFA Institute approved any of the Defendant's Goods & Services offered under Defendant's Infringing Marks.

62. CFA Institute's United States Trademark Registrations identified above provide, at the very least, constructive notice to Defendant of the rights of CFA Institute in and to the CFA Marks.

63. Defendant's use of the Infringing Marks in connection with Defendant's Goods & Services is likely to cause confusion, mistake, or deception of consumers as to the source of origin or sponsorship of the goods and services, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

64. Consumers are likely to purchase or engage the Defendant's Goods & Services being offered under the Infringing Marks believing them to be those of CFA Institute, thereby resulting in a loss of goodwill and economic harm to CFA Institute.

65. Upon information and belief, Defendant intentionally adopted and uses the Infringing Marks so as to create consumer confusion and traffic off CFA Institute's reputation and goodwill under the CFA Marks.

66. CFA Institute is informed and believes, and on that basis, alleges that Defendant has derived unlawful gains and profits from its infringing use of the Infringing Marks.

67. The goodwill of CFA Institute's business under the CFA Marks is of great value, and CFA Institute will suffer irreparable harm should Defendant's infringement be allowed to continue to the detriment of the trade reputation and goodwill of CFA Institute for which damage CFA Institute cannot be adequately compensated at law.

68.     CFA Institute has no control over the quality of the goods and services offered by Defendant.  Thus, the great value of the CFA Marks of CFA Institute is subject to damage by an entity CFA Institute cannot control.

69.     Unless enjoined by this Court from so doing, Defendant will continue to engage in its acts of infringement, to the irreparable damage and injury of CFA Institute.

70.     Upon information and belief, Defendant has engaged in acts of infringement, with knowledge of CFA Institute's exclusive rights in and to the CFA Marks in connection with the CFA Institute Goods & Services, and Defendant continues in such acts of intentional infringement, thus entitling CFA Institute to an award of treble its actual damages, Defendant's profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

**SECOND CLAIM FOR RELIEF**
**(Federal Unfair Competition and False Designation of Origin and**
**False and Misleading Representations – 15 U.S.C. § 1125(a))**

71.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 70 above, as if set forth herein in full.

72.     Defendant's use of the Infringing Marks constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that the Defendant's Goods & Services offered for sale under Defendant's Infringing Marks are those of CFA Institute in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.     Defendant's actions cause or are likely to cause confusion or mistake among the public as to the true origin and sponsorship of the Defendant's Goods & Services offered for sale under Defendant's Infringing Marks, and to confuse the public into believing that the Defendant's Goods & Services have the approval of CFA Institute, or are otherwise affiliated,

connected, associated with, or sponsored by CFA Institute, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     CFA Institute has no control over Defendant and the nature and quality of Defendant's Goods & Services offered for sale under Defendant's Infringing Marks.   Any failure, neglect, or default of Defendant in providing goods and services will reflect adversely on CFA Institute.

75.     Upon information and belief, Defendant intentionally adopted and uses the Infringing Marks so as to create consumer confusion and traffic off CFA Institute's reputation and goodwill under the CFA Marks.

76.     CFA Institute is informed and believes, and on that basis, alleges that Defendant has derived unlawful gains and profits from its infringement of the CFA Marks.

77.     The goodwill of CFA Institute's business under the CFA Marks is of great value, and CFA Institute will suffer irreparable harm should Defendant's acts of unfair competition, and false representation and designations, be allowed to continue, to the detriment of the trade reputation and goodwill of CFA Institute for which damage CFA Institute cannot be adequately compensated at law.

78.     CFA Institute has no control over the quality of the goods and services offered by Defendant.  Thus, the value of the CFA Marks of CFA Institute is subject to damage by an entity it cannot control.   Unless enjoined by this Court from so doing, Defendant will continue to engage in acts of unfair competition, and false representation and designation, to the irreparable damage and injury of CFA Institute and its authorized CFA charterholders, as well as the public's detriment.

79.     Upon information and belief, from the outset, Defendant has engaged in acts of unfair competition, and false representation and designation, with knowledge of the exclusive rights of CFA Institute in and to the CFA Marks in connection with closely related goods and services, and Defendant continues in such acts of unfair competition, false representation and designation, in violation of 15 U.S.C. § 1125(a), thus entitling CFA Institute to an award of its actual damages, Defendant's profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

**THIRD CLAIM FOR RELIEF**
**(Trademark Infringement And Unfair Competition**
**Under the State of New York Common Law)**

80.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 79 above, as if set forth herein in full.

81.     CFA Institute owns and enjoys common law rights in the State of New York and elsewhere in the United States in and to the CFA Marks for the CFA Institute Goods & Services. CFA Institute is the exclusive owner of the common law trademark rights in the CFA Marks.  No license or authorization has been granted to Defendant to use any of these marks, or variations thereon.

82.     Defendant, with full knowledge of the public awareness and value of the CFA Marks, has traded off and misappropriated the reputation and valuable goodwill of the CFA Marks of CFA Institute in the State of New York and acted in a manner that has created and will continue to create a likelihood of confusion and mistake as to the source of the Defendant's Goods & Services.  By falsely suggesting a connection with or sponsorship by CFA Institute, Defendant's acts are likely to lead the public to believe mistakenly that Defendant's Goods & Services are in some way associated with, connected with, or sponsored by CFA Institute, to the

detriment of CFA Institute, and without CFA Institute's authorization.  Defendant's activities constitute unfair competition, misappropriation of the goodwill of CFA Institute, and palming off.

83.     Upon information and belief, Defendant intentionally adopted and uses the Infringing Marks so as to create consumer confusion and traffic off CFA Institute's reputation and goodwill under the CFA Marks.

84.     CFA Institute is informed and believes and, on that basis, alleges that Defendant has derived unlawful gains and profits from its unlawful acts, and will continue to do so, as alleged above, and has caused loss, injury, and damage to CFA Institute, its goodwill, and the CFA Marks, in an amount as yet unknown but to be proven at trial.

85.     Unless enjoined by this Court from so doing, Defendant will continue its conduct of passing off and engaging in acts of unfair competition and cause irreparable damage and injury to CFA Institute's goodwill, business identity and reputation and its authorized CFA charterholders, as well as the public's detriment.  CFA Institute is therefore entitled to a permanent injunction enjoining and restraining Defendant from use of the Infringing Marks or any other mark that is confusingly similar to the CFA Marks.

## FOURTH CLAIM FOR RELIEF
### (Dilution Under New York Gen. Bus. Law § 360-l)

86.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 85 above, as if set forth herein in full.

87.     The CFA Marks are inherently distinctive, and/or have acquired distinction and strong secondary meaning through extensive, continuous, and exclusive use of the CFA Marks, long before Defendant began its unauthorized activities.

88.     The CFA Marks are distinctive within the meaning of N.Y. Gen. Bus. Law § 360-l.

89.     Defendant's use of the Infringing Marks has caused and is likely to cause dilution to the distinctive quality of the CFA Marks and injury to CFA Institute's business reputation in violation of N.Y. Gen. Bus. Law § 360-l.

90.     Defendant's acts complained of herein are likely to damage CFA Institute irreparably.  CFA Institute has no adequate remedy at law for such wrongs and injuries.  The damage to CFA Institute includes harm to its trademarks, goodwill, and reputation that money cannot compensate.   CFA Institute is entitled to injunctive relief enjoining Defendant's use of the Infringing Marks or any marks confusingly similar thereto or dilutive thereof in connection with the promotion, advertisement and sale of any goods or services offered or licensed by Defendant.

91.     CFA Institute is further entitled to recover from Defendant the actual damages sustained by CFA Institute as a result of Defendant's wrongful acts.   CFA Institute is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendant's acts of dilution.

92.     CFA Institute is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained as a result of it wrongful acts.  CFA Institute is presently unable to ascertain the extent of the gains, profits and advantages Defendant has realized by reason of Defendant's acts of dilution.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment Under the State of New York Common Law)

93.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 92 above, as if set forth herein in full.

94.     Defendant has and retains a benefit which in equity and good conscience belongs to CFA Institute.

95.     Defendant's acts complained of herein have conferred a benefit upon Defendant at CFA Institute's expense and to CFA Institute's loss and detriment.

96.     Defendant has unjustly obtained said benefit at CFA Institute's expense and to CFA Institute's loss and detriment.

97.     By Defendant's actions herein, Defendant continues to accept and retain benefits at CFA Institute's expense, loss, and detriment.

98.     As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched and CFA Institute has been injured and damaged.  Unless the foregoing alleged actions of Defendant are enjoined, CFA Institute will continue to suffer injury and damage, and equity and good conscience militate against permitting Defendant to continue to accept and retain benefits at CFA Institute's expense, loss, and detriment.

**SIXTH CLAIM FOR RELIEF**
**(Cancellation of U.S. Service Mark Registration No. 4538867**
**for Priority and Likelihood of Confusion Under Lanham Act 15 U.S.C. § 1064)**

99.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 98 above, as if set forth herein in full.

100.    CFA Institute asserts that Defendant's U.S. Service Mark Registration No. 4538867 should be cancelled under Section 14 of the Lanham Act, 15 U.S.C. § 1064, because CFA Institute has senior trademark rights in its CFA Marks and consequently there is no question of priority of rights, as such priority clearly belongs to CFA Institute.

101.    A petition to cancel a registration may be filed "by any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register . . . (1) [w]ithin five years from the date of the registration of the mark."  15 U.S.C. § 1064.

102.    Under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it (d) [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."

103.    On November 13, 2012, Defendant filed an intent-to-use application under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), with the USPTO for registration of the mark CFA'S BIZCAPNET for "providing an on-line searchable database featuring financial information about commercial lending services and factoring agencies as part of association services and for the benefit of the association's commercial lending members" in Class 36 ("CFA'S  BIZCAPNET  Services").    The  application  was  assigned  Serial  No.  85778221. Defendant subsequently filed a Statement of Use on March 6, 2014 alleging a date of first use and first use in commerce of September 17, 2012.  The CFA'S BIZCAPNET Mark registered on the Principal Register on May 27, 2014 as Registration No. 4538867 ("CFA'S BIZCAPNET Mark").

104.    Defendant's CFA'S BIZCAPNET Mark so resembles CFA Institute's CFA Marks in appearance, sound, meaning, and commercial impression that the use and registration thereof is likely to cause confusion, mistake, and deception as to the source or origin of CFA'S

BIZCAPNET Services in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), and will injure and damage CFA Institute and the goodwill and reputation symbolized by CFA Institute's CFA Marks.

105.     Defendant's CFA'S BIZCAPNET Services specified in the CFA'S BIZCAPNET Mark are closely related to the CFA Institute Goods & Services offered under CFA Institute's CFA Marks that the public is likely to be confused, deceived, and to assume erroneously that the CFA'S BIZCAPNET Services are those of CFA Institute or that Defendant is in some way connected with, licensed, or sponsored by or affiliated with CFA Institute, all to CFA Institute's irreparable damage.

106.     Likelihood of confusion is enhanced by the fact that Defendant's CFA'S BIZCAPNET Mark and CFA Institute's CFA Marks are identical or confusingly similar, such that the public is likely to be confused, deceived, and to assume erroneously that Defendant's CFA'S BIZCAPNET Services are those of CFA Institute or that Defendant is in some way connected with, licensed, or sponsored by or affiliated with CFA Institute, all to CFA Institute's irreparable damage.

107.     Likelihood of confusion is further enhanced by the fact that the Parties market or will likely market their goods and services in the same or similar channels of trade and to the same or similar classes of customers.

108.     Likelihood of confusion is additionally enhanced by the fact that the CFA Marks are strong, well-known, and entitled to a broad scope of protection.

109.     Defendant is not affiliated or connected with CFA Institute and has not been endorsed or sponsored by CFA Institute, nor has CFA Institute approved any of the goods or services offered or sold by Defendant under the CFA'S BIZCAPNET Mark.

110.     Defendant has never sought or obtained CFA Institute's permission to use the CFA'S BIZCAPNET Mark, nor has CFA Institute agreed to allow Defendant to use the CFA'S BIZCAPNET Mark.

111.     CFA Institute's federal registrations for the CFA Marks provide, at the very least, constructive notice to Defendant of CFA Institute's rights in and to the CFA Marks.

112.     By virtue of the foregoing, CFA Institute believes that it is now and will be damaged by the continued presence on the Principal Register of Registration No. 4538867 for the CFA'S BIZCAPNET Mark.  If Defendant is permitted to maintain Registration No. 4538867 and retain such rights as conferred under the Principal Register of the Lanham Act, Defendant will retain an unlawfully gained advantage to which Defendant is not entitled under the Lanham Act, to the detriment and harm of CFA Institute.

**SEVENTH CLAIM FOR RELIEF**
**(Cancellation of U.S. Service Mark Registration No. 4538867**
**for Abandonment for Non-Use Under Lanham Act 15 U.S.C. § 1064)**

113.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 112 above, as if set forth herein in full.

114.     CFA Institute asserts that Defendant's U.S. Service Mark Registration No. 4538867 should be cancelled under Section 14 of the Lanham Act, 15 U.S.C. § 1064, because the federal registration for the CFA'S BIZCAPNET Mark has been abandoned for non-use.

115.     A petition to cancel a registration is appropriate "[a]t any time if the registered mark . . . has been abandoned . . . ."  15 U.S.C. § 1064(3).

116.     Under Section 45 of the Lanham Act, 15 U.S.C. § 1127, "[a] mark shall be deemed to be 'abandoned'. . . [w]hen its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive

years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark."

117.    On November 13, 2012, Defendant filed an intent-to-use application under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), with the USPTO for registration of the CFA'S BIZCAPNET Mark for "providing an on-line searchable database featuring financial information about commercial lending services and factoring agencies as part of association services and for the benefit of the association's commercial lending members" in Class 36 (CFA'S BIZCAPNET Services).  The application was assigned Serial No. 85778221.  Defendant subsequently filed a Statement of Use on March 6, 2014 alleging a date of first use and first use in commerce of September 17, 2012.  The CFA'S BIZCAPNET Mark registered on the Principal Register on May 27, 2014 as Registration No. 4538867 (CFA'S BIZCAPNET Mark).

118.    Upon information and belief, Defendant has abandoned and is no longer using the CFA'S BIZCAPNET Mark.

119.    Upon information and belief, Defendant is not using the CFA'S BIZCAPNET Mark for the CFA'S BIZCAPNET Services in the United States.

120.    Upon information and belief, Defendant has not used the CFA'S BIZCAPNET Mark for the CFA'S BIZCAPNET Services in the United States for at least three consecutive years.

121.    Upon information and belief, Defendant has no intent to resume use of the CFA'S BIZCAPNET Mark for the CFA'S BIZCAPNET Services in the United States.

122.    Intent not to resume may be inferred from circumstances.  Nonuse for three consecutive years is *prima facie* evidence of abandonment.  15 U.S.C. § 1127.

123. Defendant has abandoned the CFA'S BIZCAPNET Mark within the meaning of Section 45 of the Lanham Act, 15 U.S.C. § 1127, because of Defendant's non-use of the CFA'S BIZCAPNET Mark for the CFA'S BIZCAPNET Services in the United States with no intent to resume use of the marks.

124. Since Defendant has abandoned the CFA'S BIZCAPNET Mark, U.S. Service Mark Registration No. 4538867 is subject to cancellation under Section 14 of the Lanham Act, 15 U.S.C. § 1064.

125. Accordingly, U.S. Service Mark Registration No. 4538867 should be cancelled under Section 14 of the Lanham Act, 15 U.S.C. § 1064.

126. By virtue of the foregoing, CFA Institute believes that it is now and will be damaged by the continued presence on the Principal Register of Registration No. 4538867 for the CFA'S BIZCAPNET Mark. If Defendant is permitted to maintain Registration No. 4538867 and retain such rights as conferred under the Principal Register of the Lanham Act, Defendant will retain an unlawfully gained advantage to which Defendant is not entitled under the Lanham Act, to the detriment and harm of CFA Institute.

## EIGHTH CLAIM FOR RELIEF
### (Accounting)

127. CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 126 above, as if set forth herein in full.

128. CFA Institute is entitled, pursuant to 15 U.S.C. § 1117, to recover any and all profits of Defendant that are attributable to the acts of infringement and unfair competition.

129. CFA Institute is entitled, pursuant to 15 U.S.C. § 1117, to actual damages or statutory damages sustained by virtue of Defendant's acts of infringement and unfair competition.

130.     The amount of money due from Defendant to CFA Institute is unknown to CFA Institute and cannot be ascertained without a detailed accounting by Defendant of the precise revenues received under Defendant's Infringing Marks.

### ALLEGATION OF DAMAGE COMMON TO ALL CLAIMS FOR RELIEF

131.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 130 above, as if set forth herein in full.

132.     CFA Institute has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct.  Defendant will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of CFA Institute.  CFA Institute's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

### PRAYER FOR RELIEF

WHEREFORE, CFA Institute respectfully prays the Court:

1.     Order Defendant never to file for any trademark for or incorporating the Infringing Marks, the CFA Marks of CFA Institute, or any other designation that is confusingly similar to the CFA Marks;

2.     Enter a judgment against Defendant that Defendant has committed and is committing acts of trademark infringement in violation of the rights of CFA Institute under 15 U.S.C. § 1114;

3.     Enter a judgment against Defendant that Defendant has willfully infringed the registered trademark rights of CFA Institute in and to the CFA Marks under 15 U.S.C. § 1114;

4.     Enter a judgment against Defendant that Defendant has committed and is committing acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of the rights of CFA Institute under 15 U.S.C. § 1125(a);

- 28 -

5.      Enter a judgment designating this action an exceptional case entitling CFA Institute to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

6.      Enter a judgment against Defendant that Defendant has engaged in trademark infringement and unfair competition and deceptive practices in violation of the State of New York common law;

7.      Enter a judgment against Defendant that Defendant has willfully diluted the distinctive quality of the CFA Marks under N.Y. Gen. Bus. Law § 360-l;

8.      Enter a judgment against Defendant that Defendant has been unjustly enriched at CFA Institute's expense in violation of the State of New York common law;

9.      Enter a judgment against Defendant that CFA Institute's CFA Marks have priority over Defendant's U.S. Service Mark Registration No. 4538867, and that Defendant's U.S. Service Mark Registration No. 4538867 is likely to cause confusion with CFA Institute's CFA Marks;

10.      Enter a judgment against Defendant that Defendant is not using, has not used, and has no intent to resume use of U.S. Service Mark Registration No. 4538867, and that as a result, U.S. Trademark Reg. No. 3619407 has been abandoned;

11.      Enter a judgment cancelling U.S. Service Mark Registration No. 4538867 in its entirety;

12.      Issue preliminary and permanent injunctive relief against Defendant, and that Defendant, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendant, be enjoined and restrained from:

(i)  imitating, copying, or making any other infringing use of the CFA Marks and Defendant's Infringing Marks, and any other mark now or hereafter confusingly similar to the CFA Marks;

(ii)  manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the CFA Marks, Defendant's Infringing Marks, or any mark confusingly similar thereto;

(iii)  using any false designation of origin or false description or statement which can or is likely to lead the trade or public or individuals erroneously to believe that any service has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for CFA Institute, when such is not true in fact;

(iv)  using the names, logos, or other variations thereof of the CFA Marks or Defendant's Infringing Marks in any of Defendant's trade or corporate names;

(v)  engaging in any other activity constituting an infringement of the CFA Marks, or of the rights of CFA Institute in, or right to use or to exploit the CFA Marks; and

(vi)  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above;

- 30 -

13.     Order Defendant, at its own expense, to recall all marketing, promotional and advertising materials that bear or incorporate Defendant's Infringing Marks, or any mark confusingly similar to the CFA Marks, which have been distributed, sold, or shipped, by Defendant or on its behalf, and to reimburse all customers from which said materials are recalled;

14.     Order Defendant to destroy all labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in its possession or under its control, bearing Defendant's Infringing Marks, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same;

15.     Order Defendant to publish notice to all customers or members of the trade who may have seen or heard of Defendant's use of Defendant's Infringing Marks, which notice shall disclaim any connection with CFA Institute and shall advise them of the Court's injunction order and of Defendant's discontinuance from all use of Defendant's Infringing Marks;

16.     Order Defendant to file with this Court and to serve upon CFA Institute within thirty (30) days after service upon Defendant of an injunction in this action, a written report by Defendant, under oath, setting forth in detail the manner in which Defendant has complied with the injunction;

17.     Order Defendant to pay the costs of corrective advertising;

18.     Order Defendant to hold in trust, as constructive trustee for the benefit of CFA Institute, its profits obtained from its provision of Defendant's Goods & Services offered for sale under Defendant's Infringing Marks;

19.     Order Defendant to provide CFA Institute a full and complete accounting of all amounts due and owing to CFA Institute as a result of Defendant's illegal activities;

- 31 -

20.     Order Defendant to pay the general, special, actual, and statutory damages of CFA Institute as follows:

(i)     CFA Institute's damages and Defendant's profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendant's willful violation of the federally registered trademarks of CFA Institute; and

(ii)    CFA Institute's damages and Defendant's profits pursuant to the State of New York common law;

21.     Order Defendant to pay to CFA Institute both the costs of this action and reasonable attorneys' fees incurred by CFA Institute in prosecuting this action pursuant to 15 U.S.C. § 1117(a); and

22.     Award such other and further relief as the Court deems just and proper.

Dated:  August 11, 2017                    DLA PIPER LLP (US)

                                           By: /s/ Ashley H. Joyce
                                                Ashley H. Joyce (NY Bar No. 4757076)
                                                John M. Nading (DC Bar No. 981625, *pro hac vice* application pending)
                                                500 8th Street, NW
                                                Washington, DC  20004
                                                Telephone: 202-799-4000
                                                Facsimile: 202-799-5000
                                                ashley.joyce@dlapiper.com
                                                john.nading@dlapiper.com

                                                *Attorneys for Plaintiff*
                                                *CFA Institute*

## DEMAND FOR JURY TRIAL

CFA Institute demands a trial by jury as to all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Dated:  August 11, 2017                                    DLA PIPER LLP (US)


By: /s/ Ashley H. Joyce
      Ashley H. Joyce (NY Bar No.
      4757076)
      John M. Nading (DC Bar No. 981625,
      *pro hac vice* application pending)
      500 8th Street, NW
      Washington, DC  20004
      Telephone: 202-799-4000
      Facsimile: 202-799-5000
      ashley.joyce@dlapiper.com
      john.nading@dlapiper.com

      *Attorneys for Plaintiff*
      *CFA Institute*

EAST\142631155.2